# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RAMONA BELLUCCIA, on behalf of herself, and all similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> TRANSUNION RENTAL SCREENING SOLUTIONS, INC., <br><br> Defendant. | Civil Action No. |

## PLAINTIFF'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff Ramona Belluccia ("Plaintiff") on behalf of herself and all similarly situated individuals, and for her Complaint against Defendant, states as follows:

## INTRODUCTION

1. This is a consumer class action for damages and injunctive relief brought against Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS"), pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA").

2. The rights of consumers to accurate reporting about themselves are at the heart of the FCRA. Defendant deprives consumers of these rights by reporting out-of-date and inaccurate information about consumers' civil eviction cases.

3. Despite the public availability of court records that conclusively demonstrate that eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, TURSS routinely fails to obtain up-to-date information about eviction records. This results in TURSS publishing harmful, misleading, and out-of-date information.

4. Defendant's practices harm consumers seeking residential leases by prejudicing their landlords with inaccurate, adverse information.

## PARTIES

5. Plaintiff Belluccia is a natural person and a "consumer" as protected and governed by the FCRA.

6. Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") provides consumer reports for rental screening purposes. TURSS sells background reports containing, *inter alia*, information about consumers' eviction records to prospective landlords. TURSS is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a. TURSS is regularly engaged in the business of assembling, evaluating, and publishing information concerning consumers for the purpose of furnishing consumer reports to third parties.

7. Among other things, TURSS provides background checks and credit reports to landlords for their use in deciding whether to rent to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

8. TURSS is a Delaware corporation headquartered in Illinois.

## JURISDICTION

9. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. Venue is proper in this Court, because at all times relevant to this matter, Plaintiff Belluccia resided in Tampa, Florida.

**FACTUAL ALLEGATIONS**

A.  **Regulatory and Industry Background**

11.  Defendant in this case is a consumer reporting agency ("CRA") – the bulk of its business is in the selling of consumer and background reports regarding consumers.

12.  Defendant is a subsidiary of TransUnion, one of the "Big 3" credit reporting bureaus with files on virtually the entire U.S. adult population, and TURSS itself is a major player in the rental screening industry.  TURSS provides rental screening reports on prospective tenants that include criminal history, credit history and civil/eviction history.  TURSS provides reports that are geared towards (1) small individual landlords, (2) large institutional landlords, and (3) other CRAs, who resell the data purchased from TURSS to landlords.

13.  Because Defendant is a CRA selling consumer reports, it is subject to the requirements of the FCRA.

14.  The tenant screening reports that TURSS sells to landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) because they are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the information included within bears on the reputation, personal characteristics, and mode of living of the subjects of the reports.

15.  Therefore, TURSS is required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer reports it prepares relates.  15 U.S.C. § 1681e(b).

B.  **TURSS' Flawed Practices**

16.  TURSS' repeated publication of inaccurate reports stems from, *inter alia*, a failure to obtain complete and up to date information from the original source (i.e., the courthouse).

17. For many years, TURSS has purchased public records information pertaining to residential eviction litigation ("eviction information") from one or more private vendors instead of retrieving the actual underlying court records themselves—or even more manageable digital representations—for purposes of creating and selling tenant screening reports to landlords and rental property managers.

18. TURSS also relies heavily on information that is available online, and that can be retrieved through the use of automated procedures. TURSS frequently fails to obtain data that could be obtained through an in-person or telephonic visit to a courthouse, and also fails to obtain data that exists online, but that requires a user to click in order to advance beyond an initial summary screen.

19. Regardless of whether data comes from a vendor or directly from a jurisdiction, TURSS does not obtain complete records, often obtaining only summary data available online or in bulk.

20. With respect to civil and eviction records, TURSS and its vendors infrequently re-check dockets to find updated dispositions. Thus TURSS often only reports the fact of an eviction filing against a consumer, but fails to report subsequent facts that may be favorable to the consumer (such as a verdict in their favor, a voluntary dismissal or the satisfaction of a judgment).

21. By failing to obtain updates to eviction information, TURSS regularly and illegally reports eviction information pertaining to cases and judgments that have been dismissed, withdrawn, satisfied, or have resulted in a judgment for the tenant.

22. TURSS is aware that its practices violate the law. Purchasing distilled, incomplete civil public records information was the impetus for regulatory investigations of its corporate parent and partner, TransUnion, and other CRAs, and dozens of FCRA class action lawsuits

throughout the United States, which ultimately resulted in a nationwide settlement with TransUnion. *Clark v. Trans Union, LLC*, No. 3:15-cv-00391-MHL, ECF No. 272 (E.D. Va. Aug. 29, 2018).

23. Further, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

24. Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

25. TURSS' practices and procedures regarding the reporting of eviction information, specifically the failure to report the most up-to-date status of eviction cases, causes widespread harm to consumers and interstate commerce as a whole.

---

[1] CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed Feb. 5, 2020).

[2] *Id*. at 2.1.2.

26.     This phenomenon is the result of TURSS' intentional decisions. The eviction information TURSS purchases is merely a summary that does not include the most up-to-date information available at the courthouses or government offices where the records themselves are housed.

27.     TURSS knows that its vendors routinely do not include the most up-to-date status of the actual cases.

28.     TURSS' use of out of date summary information is unreasonable and in violation of the FCRA, and TURSS was aware of this.

29.     However, TURSS, fully aware of the problems associated with the incomplete and inaccurate information purchased from vendors, has not stopped acquiring, using, and profiting from inaccurate and out-of-date eviction information.

30.     TURSS' use of this information in its reports comprises a willful violation of the FCRA, because it knowingly and willfully chose this course of action, knowing that it would lead to inaccurate reporting and harm to consumers.

**C.     TURSS' Practices Hurt Consumers**

31.     TURSS markets its services to landlords by noting that they can provide "accurate credit, criminal and eviction histories on renters." It purports to offer "more accurate matching" using "advanced matching logic to match your rental applicants to our report histories."[3]  This, however, is not the case.

---

[3]  *Tenant Screening | TransUnion SmartMove | Tenant Background Check*, https://www.transunion.com/product/smartmove (last visited Mar. 5, 2020).

32. TURSS further claims that its background screening products' "[b]road coverage and more precise matching capabilities provide comprehensive, targeted and filtered screening results."[4]

33. Landlords that purchase TURSS' services rely on the information in TURSS' reports to make eligibility decisions. Many landlords refuse to rent to people who have criminal or eviction records.

34. TURSS is aware of the detrimental impact that providing inaccurate or out of date eviction information on a prospective tenant has on that person's ability to obtain housing.

35. In fact, TURSS provides "custom leasing recommendations" in connection with its reports which advise landlords whether to accept or reject an applicant based upon the information in the report.[5] These non-binding recommendations are frequently based on eviction records like those at issue in this case.

36. TURSS furthermore offers the ability for landlords to communicate eligibility determinations directly to applicants through its services. As to many consumers, TURSS therefore retains data which reveals whether a given application was accepted or rejected by the landlord.

37. Class members are aggrieved by TURSS' conduct because they have suffered *inter alia*, the loss of housing opportunities, an increased risk of loss of housing opportunities.

38. Despite the public availability of court records that conclusively demonstrate that eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, TURSS routinely fails to obtain up-to-date information pertaining to the disposition of

---

[4] https://www.transunion.com/product/background-data-solutions (last visited Oct. 2, 2019).
[5] *See* fn. 3, *supra.*

those cases and publishes harmful, misleading, and inaccurate tenant screening consumer reports to landlords and property managers in violation of FCRA section 1681e(b).

39. TURSS' practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate, adverse information and depriving those consumers of valuable congressionally mandated information.

**D.     TURSS' Inaccurate Reporting About Plaintiff**

40. In October 2020, Plaintiff applied for a new apartment in Tampa, Florida. Plaintiff's prospective landlord sought a tenant screening report from non-party RentGrow, Inc. RentGrow, in turn, sought eviction data from TURSS.

41. TURSS reported to RentGrow information regarding a 2016 eviction action that had been filed against Plaintiff in Hillsborough County Circuit Court, Florida. TURSS reported only the fact of the filing, and not the fact that the matter had been dismissed by stipulation in early 2017.

42. RentGrow, in turn, provided TURSS' incomplete reporting to Plaintiff Belluccia's prospective landlord, who denied her rental application.

43. Plaintiff Belluccia disputed the results with RentGrow, who provided the dispute information to TURSS. TURSS removed the eviction from its reporting and provided a revised report to RentGrow.

44. Plaintiff Belluccia suffered damages from TURSS' misreporting, including but not limited to a denied rental application, time and inconvenience required to fix TURSS' errors.

**CLASS ACTION ALLEGATIONS**

45. Plaintiff brings this action on behalf of the following Classes for Defendant's violations of FCRA section 1681e(b). All Classes cover the Class Period from five years prior to the filing of the original *McIntyre* complaint to the present:

a. The **National Failure to Update Class**:

All natural persons in the United States about whom TURSS furnished a consumer report on or after April 28, 2015 that included an unpaid civil judgment or other eviction record that was furnished on a date at least sixty (60) days after the date that a satisfaction, withdraw, vacatur or dismissal of the judgment or action had been filed in the respective court, and where the report or other form of furnished information did not include that updated status.

b. The **Florida Failure to Update Sub-Class**:

All members of the National Failure to Update Class who had at least one record that meets the class definition where the record was from a Florida court.

c. The **Failure to Update Disputes Sub-Class**:

All members of the National Failure to Update Class who disputed at least one record meeting the class definition and where in response to such dispute, TURSS suppressed or deleted the record or corrected it.

46. The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to TURSS the members of the Classes number in the thousands. TURSS sells eviction information to thousands of businesses throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.

47. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual class members. The principal questions concern whether TURSS willfully and/or negligently violated the FCRA by failing to follow reasonable

9

procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction cases.

48. Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

49. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause her not to vigorously pursue this claim.

50. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

51. Whether TURSS violated the FCRA can be determined by examination of TURSS' policies and conduct and a ministerial inspection of TURSS' business records and publicly available eviction litigation records.

52. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against TURSS is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present

significantly fewer difficulties than those presented in many individual claims.  The identities of the members of the Classes may be derived from TURSS' records.

## CLAIM FOR RELIEF
### Violation of Section 1681e(b)
### Asserted by Plaintiff individually and on behalf of the Classes

53. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

54. Pursuant to sections 1681n and 1681o of the FCRA, TURSS is liable to Plaintiff and the Classes for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b).

55. Specifically, TURSS failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Classes, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

56. The foregoing violations were willful. TURSS acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and members of the Classes.

57. As a result of TURSS' conduct, Plaintiff and members of the Classes suffered damages including but not limited to, denial of housing and loss of application fees.

58. Plaintiff and members of the Classes are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from TURSS in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## JURY DEMAND

Plaintiff, on behalf of herself and the Classes, demands a trial by jury for all claims so triable.

Dated: April 2, 2021    By: <u>*/s/ Craig C. Marchiando*</u>
Craig C. Marchiando
craig@clalegal.com
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
T: (757) 930-3660
F: (757) 930-3662

*Attorney for Plaintiff*